**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ARAMARK SERVICES, INC. f/k/a ARAMARK CORPORATION; and ARAMARK BENEFITS COMPLIANCE REVIEW COMMITTEE,<br><br>*Plaintiffs*,<br><br>v.<br><br>QCC INSURANCE COMPANY d/b/a INDEPENDENCE ADMINISTRATORS; and INDEPENDENCE BLUE CROSS,<br><br>*Defendants*. | ) | Civil Action No. 2:26-cv-01664-GJP |

# DEFENDANTS' OPPOSITION IN RESPONSE TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND TO STRIKE CERTAIN AFFIRMATIVE DEFENSES

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ... ii

INTRODUCTION & BACKGROUND ... 1

ARGUMENT ... 2

I. LEGAL STANDARD ... 2

II. COUNTS I AND II OF THE COUNTERCLAIMS APPROPRIATELY ASSERT ALTERNATIVE THEORIES ... 4

III. DEFENDANTS' ALLEGATIONS IN THE COUNTERCLAIMS ARE PLAUSIBLE ... 7

IV. COUNT II OF THE COUNTERCLAIMS MEETS THE REQUIREMENTS FOR CO-FIDUCIARY LIABILITY ... 11

V. DEFENDANTS' STATE-LAW CLAIM IS NEITHER PREEMPTED NOR CONTRACTUALLY BARRED ... 14

VI. DEFENDANTS' COUNTERCLAIM FOR DECLARATORY RELIEF IS PROPERLY PLED ... 19

VII. THE COURT SHOULD GRANT LEAVE TO AMEND THE COUNTERCLAIMS IF THEY ARE INSUFFICIENTLY PLED ... 19

VIII. THE COURT SHOULD NOT STRIKE THE RELATED DEFENSES ... 20

CONCLUSION ... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ....... 16

*Askew v. R.L. Reppert, Inc.*,
902 F. Supp. 2d 676 (E.D. Pa. 2012) ....... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....... 3

*Brock v. Self*,
632 F. Supp. 1509 (W.D. La. 1986) ....... 12

*Ceres Terminal, Inc. v. United Healthcare Ins. Co.*,
No. 06-254, 2006 U.S. Dist. LEXIS 105653 (D.N.J. May 18, 2006) ....... 16

*Charles Rubenstein, Inc. v. Columbia Pictures Corp.*,
14 F.R.D. 401 (D. Minn. 1953) ....... 4, 5

*Chemung Canal Tr. Co. v. Sovran Bank/Maryland*,
939 F.2d 12 (2d Cir. 1991) ....... 14

*Chesemore v. Fenkell*,
829 F.3d 803 (7th Cir. 2016) ....... 13, 14

*Cipollone v. Liggett Grp., Inc.*,
789 F.2d 181 (3d Cir. 1986) ....... 20

*Cohen v. Baker*,
845 F. Supp. 289 (E.D. Pa. 1994) ....... 14

*Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*,
865 F.3d 1098 (8th Cir. 2017) ....... 19

*DeLa Cruz v. Piccari Press*,
521 F. Supp. 2d 424 (E.D. Pa. 2007) ....... 4

*Dorley v. S. Fayette Twp. Sch. Dist.*,
129 F. Supp. 3d 220 (W.D. Pa. 2015) ....... 5, 6

*Dukes v. U.S. Healthcare*,
57 F.3d 350 (3d Cir. 1995) ....... 16

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ....... 3

*Free v. Briody*,
732 F.2d 1331 (7th Cir. 1984) ....................................................................................14

*Giannone v. U.S. Steel Corp.*,
238 F.2d 544 (3d Cir. 1956)..........................................................................................4

*Haddock v. Nationwide Fin. Servs., Inc.*,
570 F. Supp. 2d 355 (D. Conn. 2008).........................................................................13

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011) ......................................................................................12

*Lash v. Reliance Standard Life Ins. Co.*,
No. 16-cv-235, 2017 U.S. Dist. LEXIS 75655 (E.D. Pa. May 18, 2017)...............................14

*Leventhal v. MandMarblestone Grp. LLC*,
No. 18-cv-2727, 2020 U.S. Dist. LEXIS 92059 (E.D. Pa. May 27, 2020).......................13, 14

*Menkes v. Prudential Ins. Co. of Am.*,
762 F.3d 285 (3d Cir. 2014)) ......................................................................................15

*N. Penn. Transfer, Inc. v. Victaulic Co. of Am.*,
859 F. Supp. 154 (E.D. Pa. 1994) .............................................................................3, 4

*Noasha LLC v. Nordic Group of Cos.*,
630 F. Supp. 2d 544 (E.D. Pa. 2009) .........................................................................4, 5

*Pennington v. Wells Fargo Bank, N.A.*,
947 F. Supp. 2d 529 (E.D. Pa. 2013) .........................................................................3, 4

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008)..........................................................................................3

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)........................................................................................12

*Site-Blauvelt Eng'rs, Inc. v. First Union Corp.*,
153 F. Supp. 2d 707 (E.D. Pa. 2001) ..........................................................................14

*Srein v. Frankford Tr. Co.*,
323 F.3d 214 (3d Cir. 2003)..........................................................................................6

*Vilsaint v. Jet Plastica Industries, Inc.*,
No. 05-cv-2317, 2005 U.S. Dist. LEXIS 57773 (E.D. Pa. July 6, 2005) ..................................5

**Statutes**

Employee Retirement Income Security Act of 1974 ........................................................1
29 U.S.C. § 1104.........................................................................................................8

29 U.S.C. § 1105 .......... 8, 12
29 U.S.C. § 1106 .......... 8
29 U.S.C. § 1110 .......... 9, 18
29 U.S.C. § 1132 (ERISA § 502) .......... 1, 6, 17, 19
29 U.S.C. § 1144 .......... 15

**Other Authorities**

29 C.F.R. § 2509.75-8 .......... 10

Fed. R. Civ. P. 8 .......... 4, 5, 6

Fed R. Civ. P. 10 .......... 3

Fed. R. Civ. P. 12 .......... 2, 3

U.S. Dep't of Labor, *Interpretive Bulletin Relating to Indemnification of Fiduciaries*, 29 C.F.R. § 2509.75-4, https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XXV/subchapter-A/part-2509/section-2509.75-4 .......... 18

5 Wright & Miller, *Federal Practice and Procedure* (3d ed. 2004) .......... 4

Defendants QCC Insurance Company d/b/a Independence Administrators ("QCC") and Independence Blue Cross ("IBX") (collectively, "Defendants") hereby respond to the Motion to Dismiss Independence's Counterclaims and to Strike Certain Affirmative Defenses ("Plaintiffs' Motion to Dismiss") filed by Plaintiffs Aramark Services, Inc. f/k/a Aramark Corporation ("Aramark Corp.") and Aramark Benefits Compliance Review Committee ("Committee") (collectively, "Plaintiffs").

## INTRODUCTION & BACKGROUND

Following this Court's Memorandum and Order of August 13, 2026 (ECF Nos. 46 and 47) granting in part and denying in part Defendants' Motion to Dismiss All Claims (ECF No. 20), Plaintiffs filed their First Amended Complaint ("FAC") (ECF No. 53). In response, Defendants answered the FAC, including positing Defenses, and asserted Counterclaims against Plaintiffs expressly and entirely in the alternative. *See* ECF No. 61. In the Counterclaims, Defendants allege that Plaintiffs were – by Plaintiffs' own averments and under the Court's August 13 ruling – plausibly fiduciaries within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") and, to the extent the conduct alleged in the FAC occurred, contributed as fiduciaries to such conduct or failed as fiduciaries to take reasonable steps to investigate, prevent, remedy, or otherwise address such conduct despite possessing the authority and responsibility to do so. Plaintiffs' actions and omissions, Defendants assert in the Counterclaims, constitute breaches of fiduciary duty and prohibited fiduciary transactions under ERISA, specifically triggering liability for both Plaintiffs under ERISA § 502(a)(2) and (a)(3), including for contribution in the event Defendants are liable under ERISA for harm to the relevant ERISA plans, as well as relief against Aramark Corp. under Pennsylvania law for contribution and indemnification.

In response, Plaintiffs have moved to dismiss the Counterclaims and to strike certain Defenses that they say mimic the allegedly dismissal-worthy Counterclaims. Their arguments center on a supposed prohibition on litigants in counterclaims proffering legal and factual positions counter to denials in an answer, the alleged implausibility of Defendants' allegations overall, and the purported invalidity of certain legal theories on which Defendants rely, such as contribution under ERISA and the operation of state law given ERISA preemption.

The Court should deny Plaintiffs' Motion to Dismiss, for numerous reasons. First, the Counterclaims rest on appropriate alternative theories, and courts have readily recognized that a defendant's counterclaims can be (and almost of necessity will be) in some manner inconsonant with defenses to a plaintiff's claims. Second, the factual allegations in the Counterclaims are well-pled because, among other things, they rely on the copious provisions in the Administrative Services Agreements ("ASAs") attached to the FAC, which are then themselves part of the pleadings. Indeed, Aramark Corp. signed and agreed to express provisions in the ASAs that govern, allow for, and invite the practices Plaintiffs now complain about in the FAC. Third, an alternative state-law contribution claim is not preempted in the limited circumstances where it is pursued against Aramark Corp., not the Committee, solely in its capacity as plan sponsor contracting for services with QCC. Fourth, as to the motion to strike Defenses, because Plaintiffs say the Defenses should be struck insofar as they mirror allegations in the Counterclaims that supposedly the Court should dismiss, the survival of Defendants' Counterclaims alone compels denial of Plaintiffs' request that the Defenses be struck.

## ARGUMENT

### I. LEGAL STANDARD

In the context of a plaintiff's motion to dismiss a defendant's counterclaims under Federal Rule of Civil Procedure 12(b)(6), the same dismissal standard applies as for a

defendant's motion to dismiss a plaintiff's claims in a complaint: "When deciding a motion to dismiss under Rule 12(b)(6), courts must 'accept all factual allegations as true, construe the complaint [*i.e.*, the counterclaim pleading] in the light most favorable to the plaintiff [*i.e.*, counterclaimant], and determine whether, under any reasonable reading of the complaint [*i.e.*, the counterclaim pleading], the plaintiff [*i.e.*, counterclaimant] may be entitled to relief.'" *Pennington v. Wells Fargo Bank, N.A.*, 947 F. Supp. 2d 529, 533 (E.D. Pa. 2013) (counterclaim situation) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In all instances, a pleading must set out "enough facts to state a claim to relief that is [facially] plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Additionally, in deciding particularly Plaintiffs' Motion to Dismiss, the Court may consider not just Defendants' Answer to the First Amended Complaint, Affirmative Defenses, and Counterclaims (ECF No. 61), but also the FAC and the Exhibits to it. "A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed R. Civ. P. 10(c). Plaintiffs attached the ASAs to the FAC, and Defendants incorporated the allegations contained in the FAC, including its Exhibits, into the Counterclaims. *See* Counterclaim ¶ 14 (ECF No. 61). The ASAs are therefore part of the factual base on which the Court should judge the plausibility of Defendants' Counterclaims.

Finally, pursuant to Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Pennington*, 947 F. Supp. 2d at 532 (quoting *N. Penn.*

*Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)). "'[S]triking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice" and should be used "sparingly."'" *Id.* at 532-33 (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007), quoting *N. Penn. Transfer*, 859 F. Supp. at 158).

## II. COUNTS I AND II OF THE COUNTERCLAIMS APPROPRIATELY ASSERT ALTERNATIVE THEORIES

Defendants appropriately deny fiduciary capacity in the Answer. Consistent with the Federal Rules of Civil Procedure, they assert their Counterclaims under the alternative hypothesis that they are fiduciaries under relevant case.

Federal Rule of Civil Procedure Rule 8(d)(2) expressly provides that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." "Courts have interpreted this to mean that 'counterclaims may be asserted in an alternative or hypothetical manner and *need not be consistent with the defenses and denials raised in the answer*.'" *Noasha LLC v. Nordic Group of Cos.*, 630 F. Supp. 2d 544, 550 (E.D. Pa. 2009) (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1282 at 724 (3d ed. 2004), citing *Charles Rubenstein, Inc. v. Columbia Pictures Corp.*, 14 F.R.D. 401 (D. Minn. 1953)) (emphasis added). Moreover, "[t]o construe [a] defendants' counterclaims as an admission of facts that were clearly denied in the answer would run counter to the purpose of the Federal Rules of Civil Procedure." *Id.* at 551 (citing *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956)). "[T]he Federal Rules of Civil Procedure were designed to 'liberate pleaders from the inhibiting requirement of the law's insistence on technical consistency.'" *Id.* (quoting 5 Wright & Miller, *supra*, § 1283 at 725). As such, Defendants' Counterclaims are properly pled in the alternative.

Nonetheless, Plaintiffs argue that Counts I and II of the Counterclaims, pursued under

ERISA, fail because the alleged facts and theories underlying them are inconsistent with the "Answer" and "Defenses" portions of Defendants' Answer to the First Amended Complaint, Affirmative Defenses, and Counterclaims (ECF No. 61). Plaintiffs frame the Counterclaims as resting "entirely on a factual premise that Independence itself denies – that Independence engaged in conduct that harmed the Plans." ECF No. 63-1 at 7. Supposedly, while Plaintiffs appear to concede Defendants can present *legal* arguments in the alternative, Defendants cannot both deny *facts* in a pleading and then rely on those same facts to assert a counterclaim. *See id.* at 7-8. But as the discussion and case law above illustrate, alternative pleading exactly of the sort Defendants utilize is authorized under Rule 8(d) and the Federal Rules of Civil Procedure overall.[1]

The two cases on which Plaintiffs rely for their postulate that a litigant cannot "build" a counterclaim on facts it "disavows" in an answer (*id.* at 8) – *Vilsaint v. Jet Plastica Industries, Inc.*, No. 05-cv-2317, 2005 U.S. Dist. LEXIS 57773 (E.D. Pa. July 6, 2005), and *Dorley v. South Fayette Township School District*, 129 F. Supp. 3d 220 (W.D. Pa. 2015) – are readily distinguishable. In *Vilsaint*, the plaintiff conceded facts that made her claim untenable and, "[i]n a final attempt to avoid dismissal," she "attempt[ed] to characterize her concession as pleading in the alternative." 2005 U.S. Dist. LEXIS 57773, at *3. In *Dorley*, the court concluded that "the Plaintiff's current pleading asserts theories and detailed facts so inherently in tension with one

[1] *Noasha* noted with approval the circumstances and holding in the venerable *Charles Rubenstein* case. "In *Charles Rubenstein*, the defendants were accused of involvement in a conspiracy. 14 F.R.D. at 401. Their answer included a denial of the existence of the conspiracy and a counterclaim alleging that a conspiracy existed and the plaintiff was a co-conspirator that damaged the defendants in the conspiracy. *Id.* The District Court held this to be permissible pleading in the alternative. *Id.*" *Noasha*, 630 F. Supp. 2d at 550 n.6. The situation here is analogous, with Defendants in their answer denying fiduciary misconduct and, in their Counterclaims, assuming misconduct occurred but that Plaintiffs were wrongdoers along with Defendants (if Defendants were found to be wrongdoers).

another that they lack the requisite plausibility to withstand the Motion to Dismiss." 129 F. Supp. 3d at 237. In contrast to those decisions, Defendants have not conceded or pled any facts that would foreclose their Counterclaims. They have carefully *denied* the allegations in the FAC, rather than made concessions of any sort that would make the Counterclaims facially implausible, such as if Defendants had somewhere conceded wrongdoing on their part and blamelessness on Plaintiffs' part.

Next, using the monicker of lack of "standing" (ECF No. 63-1 at 8-9), notwithstanding the Court's earlier characterization of standing as a "misnomer" in these circumstances (*see* ECF No. 46 at 7), Plaintiffs point to Defendants' denials in its Answer that IBX acted as an ERISA fiduciary and that QCC acted as an ERISA fiduciary except to the limited extent expressly provided for in the 2018 ASA applicable for the 2019 to 2021 period. Plaintiffs contend that given these denials, "Independence lacks standing as a fiduciary to bring its ERISA counterclaims." ECF No. 63-1 at 9; *see* 29 U.S.C. § 1132(a)(2), (a)(3) (authorizing a "participant, beneficiary, [or] fiduciary" to bring suit).

Again, Plaintiffs miss the mark, by failing to heed Rule 8(d)(2)'s allowance for pleading in the alternative. Thus, Defendants can deny fiduciary capacity in the Answer, and assert their Counterclaims under the hypothesis that they are fiduciaries. Notably, whether an entity is a fiduciary for ERISA purposes is a question of law, not of fact. *See Srein v. Frankford Tr. Co.*, 323 F.3d 214, 220 (3d Cir. 2003). So, even Plaintiffs' (erroneous) protestation against alternative "fact" pleading cannot salvage their contention, since Defendants here are presenting alternative positions on the *legal* question of whether Defendants qualify as fiduciaries.[2]

---

[2] In a footnote, Plaintiffs say Defendants' "qualification" that QCC is a fiduciary for certain limited purposes under the 2018 ASA in place for 2019-21 is "insufficient" to support the Counterclaims. They are wrong on that score too. ECF No. 63-1 at 9 n.3. Even if Defendants

## III. DEFENDANTS' ALLEGATIONS IN THE COUNTERCLAIMS ARE PLAUSIBLE

IN the Counterclaims, Defendants plausibly allege, sufficient to survive dismissal, that Plaintiffs ratified the conduct of which they now complain and that Plaintiffs had abundant, but unexercised, authority and options to monitor and police Defendants and had fiduciary obligations to do so, once hiring Defendants and supposedly delegating to them fiduciary authority.

Plaintiffs contend that Counts I and II of the Counterclaims should be dismissed because Defendants insufficiently plead facts in support of their claims, maintaining that the allegations in these Counterclaims are conclusory, implausible, and unsubstantiated. *See* ECF No. 63-1 at 6-7. Plaintiffs' contention is meritless.

Focusing on two of Defendants' chief sets of allegations suffices to show the plausibility of the Counterclaims. The first illustrative set of allegations in the Counterclaims concerns Plaintiffs' adoption of the ASAs. In the Counterclaims, Defendants allege as follows:

> 27. To the extent any conduct challenged in the FAC was authorized, required, contemplated, permitted, directed, approved, or facilitated by the ASAs or other governing agreements entered into, approved, renewed, or maintained by Aramark Corp. or the Committee, Aramark Corp. and the Committee bear responsibility for approving and continuing such arrangements in the exercise of their fiduciary authority.

Counterclaims ¶ 27 (ECF No. 61). Accordingly, Defendants allege that Plaintiffs entered the ASAs as part of their fiduciary obligations, that the ASAs permit certain practices about which they now complain and say constitute breaches of fiduciary duty, and that Plaintiffs by entering the ASAs authorizing the allegedly illegal conduct breached their own fiduciary obligations,

---

could not allege fiduciary status in the Counterclaims if they denied it in the Answer (which, again, they can), Defendants have not disputed a limited fiduciary status for QCC for at least part of the period in question, giving QCC authority as a fiduciary to invoke ERISA's enforcement scheme at least for that interval.

engaged in prohibited transactions, and contributed to the harm the relevant ERISA plans allegedly endured.

Put differently, ERISA expressly provides:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if, by his failure to comply [with his own fiduciary duties] in the administration of his of his specific responsibilities which give rise to his status as a fiduciary, he has *enabled* such other fiduciary to commit a breach.

29 U.S.C. § 1105(a)(2) (emphasis added). That is exactly Defendants' averment in the Counterclaims: insofar as Defendants are fiduciaries and have breached their duties with conduct authorized in the ASAs, then Plaintiffs – also as fiduciaries – impermissibly enabled the behavior by entering the offending ASAs (with entering only reasonable, prudent contracts instead being Plaintiffs' fiduciary duty, *see id.* §§ 1104(a)(1), 1106(a)(1)(C), 1108(b)(2)(A)).)

Further, the ASAs (which, again, are part of the pleadings, *see supra* p. 3) are replete with provisions authorizing QCC to engage in the acts and omissions that Plaintiffs now contend constitute breaches of Defendants' fiduciary duties. For instance, Plaintiffs maintain that Defendants breached their fiduciary duties because Defendants failed to police fraud, failed to subrogate in certain cases, failed to seek to recover overpayments made in certain instances, and engaged in cross-plan offsetting. Yet, the ASAs expressly provide that QCC has "no obligation" at all to investigate fraud (2018 ASA art. IV, § Q(2) (ECF No. 53-1 at ECF page 9 of 74); 2022 ASA §§ 2.10(B), 2.18 (ECF No. 53-2 at ECF pages 9 and 10 of 53))[3]; the ASAs do not require that QCC subrogate or seek to recover overpayments in all or any particular cases (*see* 2018 ASA art. IV §§ K(3)(d), O (ECF No. 53-1 at ECF pages 8, 9); 2022 ASA §§ 2.8, 2.9(3)(d). 2.18,

[3] When citing to the ASAs, Defendants reference ECF pagination. In all other instances in this Opposition, Defendants' citation to ECF documents are to the page of the document itself, not its ECF pagination.

2.21. 3.7 (ECF No. 53-2 at ECF pages 7-8, 10, 11, and 13 of 53)); and they provide that QCC can and will (at least as of 2022) engage in cross-plan offsetting. *See* 2022 ASA § 2.21 (ECF No. 53-2 at ECF page 11 of 53). If all of those acts and omissions by Defendants nonetheless were illegal, then Plaintiffs enabled the illegal behavior by authorizing the acts and omissions in the very contracts Aramark Corp. entered with QCC.

It is no answer for Plaintiffs to contend that the relevant ASA provisions authorizing the conduct Plaintiffs now deem illegal are void as against public policy under ERISA for, in fact, authorizing illegal behavior. *See* ECF No. 63-1 at 15 (citing 29 U.S.C. § 1110(a)). Even with any voiding of the ASAs' provisions, Plaintiffs, in all events, will have entered contracts with illegal provisions and thereby enabled and invited illegal activities. They bear responsibility for the situation no differently than service-providers like QCC who followed the contract provisions as (allegedly illegally) written.

The second set of allegations evidencing the plausibility of the Counterclaims concerns Plaintiffs' expansive, but unexercised, authority to monitor Defendants' actions. In the Counterclaims, Defendants allege:

> 29. As Plan fiduciaries, Plaintiffs possessed authority to monitor service providers, make or review claims determinations and claims payments, review reports, evaluate claims-administration activities, oversee appeals activities, conduct audits, request information, direct corrective action, and take such other actions as Plaintiffs deemed appropriate in connection with administration of the Plans.
>
> 30. To the extent any of the conduct alleged in the FAC occurred, Plaintiffs knew or reasonably should have known of such conduct through the exercise of prudent fiduciary oversight and monitoring. Plaintiffs, during the later part of the period in question purported to investigate QCC's performance, but did not similarly do so prior to that time. Nor did Plaintiffs take any corrective measures prior to filing this lawsuit, including failing to seek to amend the ASAs to which they agreed and that they allege invited the conduct they deem illegal.

Counterclaims ¶¶ 29, 30 (ECF No. 61); *see* 29 C.F.R. § 2509.75-8 at FR-17 (U.S. Department of Labor guidance stating: "At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure will be appropriate in all cases . . . ."); *see also* 2018 ASA art. IV, § J (ECF No. 53-1 at ECF page 7 of 74) (Aramark Corp.'s right to receive and request claims reports); *id.*, art. VII, § B (ECF No. 53-1 at ECF page 17 of 74) (assigning Aramark Corp. "ultimate responsibility for payment of claims and other expenses under the Benefit Program"); *id.*, art. XI §§ A – C (audit rights) (ECF No. 53-1 at ECF pages 20 and 21 of 74); 2022 ASA § 2.5 (ECF No. 53-2 at ECF page 7 of 53) (Aramark Corp.'s right to receive and request claims reports); *id.* § 2.17 (ECF No. 53-2 at ECF page 10 of 53) (audit rights); *id.* § 3.3 (ECF No. 53-2 at ECF page 12 of 53) (providing Aramark Corp. with right to "review all Determinations made by [QCC]"); *id.*, Ex. B, § II(2) (ECF No. 53-2 at ECF pages 25-26) (providing Aramark Corp. with right to "reasonably request" information about any claim).

Hence, Defendants allege that Plaintiffs had abundant authority and options to monitor and police Defendants and had fiduciary obligations to do so once hiring Defendants and supposedly delegating to them fiduciary authority; but Plaintiffs engaged in none of the necessary oversight for most of the period involved in the litigation. Had they fulfilled their monitoring obligations, it is plausible they would have discovered any allegedly nefarious conduct, especially given the sheer breadth of the wrongful activities in which Plaintiffs say Defendants engaged and the millions of dollars in losses that Plaintiffs say Defendants caused. At a minimum, it is not outlandish that serious, timely, and required oversight could have

"caught" some of the alleged wrongdoing and stemmed some of the ERISA plans' purported significant financial losses. Under these circumstances, it is for the Court as the fact-finder to determine, after discovery, the avenues Plaintiffs had to monitor and stanch Defendants' purported bad acts, the extent to which Plaintiffs ignored their obligations, and the losses to the ERISA plans resulting from Plaintiffs failure to institute protective measures.

Nor can Plaintiffs avoid the plausibility of the Counterclaims through citation to their own allegations "that Independence actively concealed the information that it alleges Aramark knew or should have known, failed to monitor, or acquiesced in." ECF No. 63-1 at 7. The concealment about which Plaintiffs complain is that Defendants never affirmatively disclosed their misdeeds, *see, e.g.*, FAC ¶ 35 (ECF No. 53), not that Defendants somehow "cooked the books" or falsified materials that Plaintiffs did seek, receive, and review. That Defendants did not volunteer information about their actions does not negate the likelihood that Plaintiffs own affirmative measures to monitor would have detected alleged wrongdoing.

## IV. COUNT II OF THE COUNTERCLAIMS MEETS THE REQUIREMENTS FOR CO-FIDUCIARY LIABILITY

In Count II, Defendants adequately plead co-fiduciary liability under ERISA and controlling case law.

Under a separate heading, Plaintiffs assert that there are "[a]dditional [r]easons" not applicable to Count I of the Counterclaims that supposedly warrant dismissal of Count II of the Counterclaims. ECF No. 63-1 at 9. Count II posits a claim styled as "Co-Fiduciary Liability" (ECF No. 61 at page 54); in turn, Plaintiffs claim: (1) that co-fiduciary liability has an actual-knowledge requirement unpled here; and (2) that Plaintiffs cannot be subject to co-fiduciary liability because they are only passive wrongdoers, not the main one. *See* ECF No. 63-1 at 9-10. Neither provides a basis for dismissing Count II.

***A.*** ***Actual Knowledge***. Plaintiffs' argument that Third Circuit precedent imputes an "'actual knowledge'" requirement into co-fiduciary liability is unavailing. ECF No. 63-1 at 9 (quoting *Renfro v. Unisys Corp.*, 671 F.3d 314, 324 (3d Cir. 2011)). Defendants do not dispute that *some* forms of co-fiduciary liability attach only if the co-fiduciary "participates *knowingly* in . . . an act or omission of such other fiduciary, *knowing* such act or omission is a breach" or if the co-fiduciary "has *knowledge* of a breach of such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(1), (3) (emphasis added). But in other instances, ERISA's plain language (as mentioned already) mandates co-fiduciary liability whenever the co-fiduciary itself has engaged in a breach that "has enabled such other fiduciary to commit a breach." *Id.* § 1105(a)(2). It is the latter type of co-fiduciary liability that the Counterclaims invoke, and it has no requirement that the co-fiduciary know its own breach necessarily has resulted in another fiduciary's breach. *See Brock v. Self*, 632 F. Supp. 1509, 1524 (W.D. La. 1986) ("The failure of Third-Party Plaintiffs to exercise their fiduciary obligations plainly enabled Third-Party Defendants, as unnamed fiduciaries, to commit breaches of their fiduciary duties, and Third-Party Plaintiffs therefore cannot be absolved from liability."); *see also Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011) ("a plan administrator or sponsor cannot escape liability by passing the buck to another person and then turning a blind eye").

***B.*** ***Relative Fault of Co-Fiduciaries.*** Plaintiffs argue that Defendants cannot make out a co-fiduciary counterclaim because Defendants were "the sole primary wrongdoer" and Plaintiffs were "at most" passive or nominal participants in the breaches. ECF No. 63-1 at 11. However, Plaintiffs cite no case law holding that a "primary wrongdoer" is barred from bringing a claim of co-fiduciary liability. Rather, the authority cited by Plaintiffs explains that "ERISA's grant of

equitable remedial power and its foundation in principles of trust law permit the courts to order contribution or indemnification among cofiduciaries based on degrees of culpability." *Chesemore v. Fenkell*, 829 F.3d 803, 812 (7th Cir. 2016) (cited by Plaintiffs at ECF No. 63-1 at 10). And a plaintiff's merely "careless conduct" may lead it to breach its fiduciary duties, supporting liability when others likewise are guilty of fiduciary breaches. *Leventhal v. MandMarblestone Grp. LLC*, No. 18-cv-2727, 2020 U.S. Dist. LEXIS 92059, at *13 (E.D. Pa. May 27, 2020) (cited by Plaintiffs at ECF No. 63-1 at 10).

Plaintiffs point to a decision from the District Court of Connecticut, which the court there admitted was "an unusual case." *Haddock v. Nationwide Fin. Servs., Inc.*, 570 F. Supp. 2d 355, 364 (D. Conn. 2008). The alleged harm was "limited to payments received by Nationwide" and "[c]omplete compensation [could] be achieved by requiring Nationwide to repay the . . . payments." *Id.* The court reasoned that "[b]ecause complete relief can be afforded by requiring the fiduciary that received the payments to return them, principles of sharing the 'loss' simply do not apply." *Id.* By contrast, here, this case does not present a similarly unusual situation. Plaintiffs have not contended that Defendants can easily "return" funds at issue; in fact, the wrongdoing about which Plaintiffs complain is *failure* to recover funds, such as through anti-fraud actions, subrogation, or overpayment recovery efforts. There is no pot of money in Defendants' custody from which Plaintiffs' supposed loss can easily be remedied by transfer of title to those funds. Instead, as in the more typical case, the Court would need to remedy any loss by assigning blame among assorted co-fiduciaries, based on their respective levels of culpability, and by requiring monetary compensation (in an equitable form) in appropriate ratio from them.

In any event, even if Plaintiffs were correct that there were some rule under ERISA against primary wrongdoers sharing liability with nominal or passive ones, the Court would still need to deny Plaintiffs' Motion to Dismiss, because it is premature to determine the parties' levels of fault to apply any such rule. Whether QCC was the "primary" wrongdoer, whether Plaintiffs' participation was merely "nominal," or whether any of the purported fiduciaries was substantially more at fault necessarily turns on the facts concerning each party's conduct and relative responsibility. Determining respective degrees of fault of co-fiduciaries and apportioning relief "equitably between the wrongdoers" are not matters for the pleading stage. *Chesemore*, 829 F.3d at 812 (cleaned up); *see Lash v. Reliance Standard Life Ins. Co.*, No. 16-cv-235, 2017 U.S. Dist. LEXIS 75655, at *10-11 (E.D. Pa. May 18, 2017) (denying dismissal where the crossclaim plausibly alleged that the counterclaim defendant was a co-fiduciary that contributed to the alleged breach).[4]

## V. DEFENDANTS' STATE-LAW CLAIM IS NEITHER PREEMPTED NOR CONTRACTUALLY BARRED

Defendants' state-law claim implicates legal duties separate and apart from ERISA's statutory enforcement scheme, thereby foreclosing any preemption argument, and otherwise is cognizable under Pennsylvania law.

[4] Plaintiffs do not appear to challenge that contribution and indemnification (which are requested in Count II of the Counterclaims, *see* Counterclaims ¶ 54) are remedies available under ERISA. Courts both inside and outside of this Circuit have held that "contribution and indemnification are available remedies between co-fiduciaries in ERISA actions." *Askew v. R.L. Reppert, Inc.*, 902 F. Supp. 2d 676, 686 (E.D. Pa. 2012); *accord Chemung Canal Tr. Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 18 (2d Cir. 1991); *Free v. Briody*, 732 F.2d 1331, 1337 (7th Cir. 1984); *Leventhal*, 2020 U.S. Dist. LEXIS 92059, at *10; *Site-Blauvelt Eng'rs, Inc. v. First Union Corp.*, 153 F. Supp. 2d 707, 710 (E.D. Pa. 2001); *Cohen v. Baker*, 845 F. Supp. 289, 291 (E.D. Pa. 1994).

With respect to Count III of the Counterclaims, which seeks contribution and indemnification under Pennsylvania law *solely* against Aramark Corp. as the plan sponsor who contracted for services with QCC for the ERISA plans, Plaintiffs argue that ERISA preempts the state-law claim and, alternatively, that the claim fails under the ASAs' provisions on indemnification and under Pennsylvania law. Both points are unpersuasive.

***A. <u>Preemption</u>.*** Count III presumes that Plaintiffs succeed with their ERISA-based claims against Defendants and obtain some form of monetary judgment. After completion of the Court's ERISA-based adjudication, Defendants maintain they can then – in addition or in the alternative to any post-judgment remedies under ERISA – seek indemnification against Aramark Corp. for their liability pursuant to the terms for indemnification under the ASAs and state law. The state-law claim focuses on the terms of the parties' contractual agreements, between plan sponsor and service provider, and does not question or try to alter the terms of the ERISA judgment against Defendants that sits in the background. Rather, it seeks the benefit of the bargain (on indemnification) that QCC initially brokered with Aramark Corp.

ERISA, of course, contains an expansive preemption provision stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). Plaintiffs argue that the state-law indemnification claim fits within the statutory preemption provision because the state-law claim "require[s] reference to the Plans" for resolution. ECF No. 63-1 at 12 (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 295-96 (3d Cir. 2014)). But that is a mischaracterization of Count III. The state-law indemnification claim does not seek to relitigate anything under ERISA or to question the propriety of any ERISA judgment the Court may issue. The claim accepts, if proven by Plaintiffs, ERISA liability and proceeds to the issue of whether

the ASAs' indemnification rules now warrant payment from Aramark Corp. as contracting party to the other contracting party. In other words, to resolve the state-law indemnification claim, the Court need not review or implement ERISA or a plan's terms, just determine the application of the indemnification provisions in the ASAs, which are service-provider contracts and not the ERISA plan itself.

Similarly, Plaintiffs then turn to the doctrine of "complete preemption," with no success. *See* ECF No. 63-1 at 12-13. Complete preemption stems from the power of ERISA's enforcement scheme, converting a state-law claim that fits within ERISA's enforcement regime to a federal claim, *so long as* the state-law claim does not involve a "legal duty (*state* or federal) independent of ERISA or the plan terms." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (emphasis added). The short answer on complete preemption is that Defendants' state-law indemnity claim "implicate[s]" an "independent legal duty" under state law – namely, obligations under state indemnity, contribution, and contract law, where the parties have delineated by contract their respective rights. *Id.* Again, under the state-law claim, no construction of plan terms or ERISA is necessary for resolution of the state-law indemnification issue. *See Dukes v. U.S. Healthcare*, 57 F.3d 350, 358 (3d Cir. 1995) (rejecting complete preemption because "[t]he plaintiffs are not attempting to define new rights under the terms of the plan; instead, they are attempting to assert their already-existing rights under the generally-applicable state law of agency and tort") (cleaned up); *Ceres Terminal, Inc. v. United Healthcare Ins. Co.*, No. 06-254, 2006 U.S. Dist. LEXIS 105653, at *12-13 (D.N.J. May 18, 2006) (rejecting complete preemption in context of ASA between plan sponsor and third-party administrator to self-funded health plan and stating: "As plaintiff is not asserting its claims in its fiduciary

capacity but rather asserting its own rights, plaintiff has no standing to bring its claims under § 502(a)(2) or (a)(3).”).

***B. Validity of the Claim under the ASAs and Pennsylvania Law.*** Plaintiffs then wrongly contend that they win now – at the pleadings stage – on the construction of the ASAs' indemnification provisions and under state law, if state law is not preempted. *See* ECF No. 63-1 at 13-14. As to the construction of the indemnification provisions, Plaintiffs do not even cite or quote the right ones. They reference a provision in the 2022 ASA governing *Aramark Corp.'s right to indemnification from QCC,* which Defendants have not invoked and is not at issue. *See id.* at 14.

The two indemnification provisions that *are* in question appear in the 2018 ASA at art. IX, § A(4) (ECF No. 53-1 at ECF pages 20 of 74) and in the 2022 ASA at § 8.1(B) (ECF No. 53-2 at ECF page 22 of 53).

The first provision authorizes indemnification from Aramark Corp. where QCC suffers liability that “arise[s] out of the Group's [Aramark Corp.'s] role as employer, Plan administrator or Plan Sponsor, *including its acts and/or omissions.*” 2018 ASA, art. IX, § A(4) (ECF No. 53-1 at ECF pages 20 of 74) (emphasis added). Here, consistent with that provision, the scenario (with the allegations assumed to be true) is that Aramark Corp. as plan sponsor has agreed (*i.e.*, an affirmative act) to provisions in the ASA that now trigger liability for Defendants under ERISA and also has not exercised its monitoring obligations to mitigate plan losses from any alleged infractions of Defendants. Likewise, the 2022 ASA's indemnification provision mandates indemnification from Aramark Corp. to QCC where liability “arise[s] out of or result[s] from Aramark's role as employer, Plan Administrator or Plan Sponsor, including acts and/or omissions”; and it necessitates indemnification for QCC liability “arising out of or

resulting from acts and/or omission of any other fiduciaries under the Plan." 2022 ASA, § 8.1(B)(ii), (iii) (ECF No. 53-2 at ECF page 22 of 53) (emphasis omitted). As with the 2018 provision, it is comfortably, and certainly plausibly, within the 2022 ASA provision for Aramark Corp. to indemnify Defendants where Defendants' have incurred liability in conjunction with ASA terms to which Aramark Corp. agreed as plan sponsor or where Defendants' alleged liability is exaggerated as a result of Aramark Corp.'s in action in monitoring its service provider's performance.

Furthermore, Pennsylvania law does not foreclose indemnification here. Plaintiffs reference Pennsylvania principles supposedly establishing strict rules for another party "to cover the indemnitee's own negligence." ECF No. 63-1 at 14. But here, Defendants' allegation is that *Plaintiffs' negligence* (not Defendants' own) in acting or failing to act led to or enhanced in some measure Defendants' liability.

Finally, Plaintiffs can find no refuge in 29 U.S.C. § 1110(a), which voids agreements that "relieve a fiduciary from responsibility or liability." *See* ECF No. 63-1 at 15. In this instance, Defendants are not relieved of liability, as the recovery to the ERISA plan remains in place and the same, just divided (after-the-fact) among more payors. More important, U.S. Department of Labor guidance provides that indemnification to a fiduciary for liability is permissible if it comes from a plan sponsor or employer and not plan assets, a standard fully satisfied here. *See* U.S. Dep't of Labor, *Interpretive Bulletin Relating to Indemnification of Fiduciaries*, 29 C.F.R. § 2509.75-4, https://www.ecfr.gov/current/title-29/subtitle-B/chapter-XXV/subchapter-A/part-2509/section-2509.75-4; *see also* 2022 ASA, § 8.1(D) (ECF No. 53-2 at ECF page 22 of 53) (specifying that Aramark Corp, for indemnification shall "us[e], if necessary, funds that are not Plan assets").

## VI. DEFENDANTS' COUNTERCLAIM FOR DECLARATORY RELIEF IS PROPERLY PLED

Defendants' request for declaratory relief is explicitly authorized by ERISA and appropriately pled.

Plaintiffs assert that Defendants' counterclaim for declaratory relief should be dismissed for the same reason that this Court dismissed Plaintiffs' declaratory relief claim as pled in its initial Complaint (ECF No. 1). However, as this Court explained in its August 13 Memorandum, Count V of the initial Complaint requested a declaration but "provide[d] no basis for th[e] claim." ECF No. 46 at 22-23. The Court noted that 29 U.S.C. § 1132(a)(3) did not "help [Plaintiffs] because they never cited that provision in Count V." *Id.* at 23. By contrast, Defendants' request for declaratory relief is expressly brought pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *See* ECF No. 61 at 56 (Count IV's title referencing "ERISA § 502(a)(3)"). ERISA § 502(a)(3) authorizes "appropriate equitable relief" (29 U.S.C. § 1132(a)(3)) for violations of ERISA, including breaches of fiduciary duty or prohibited transactions, and declaratory relief is "consistent with the plain language of § 502(a)(3), construed in light of historical equitable remedies available to trustees." *Dakotas & W. Minn. Elec. Indus. Health & Welfare Fund v. First Agency, Inc.*, 865 F.3d 1098, 1104 (8th Cir. 2017).

## VII. THE COURT SHOULD GRANT LEAVE TO AMEND THE COUNTERCLAIMS IF THEY ARE INSUFFICIENTLY PLED

Plaintiffs ask the Court to dismiss the Counterclaims with prejudice, arguing that "no scenario exists" in which Defendants can make out their claims under ERISA or state law and that any amendments to the Counterclaims would be futile. ECF No. 63-1 at 15-16. This is an exceedingly complex ERISA matter, with years of relationships between the litigating parties and numerous, divergent contracts between them at issue and with potentially millions of dollars at risk. If Defendants have not sufficiently pled the facts and theories supporting their

Counterclaims, they respectfully ask the Court for opportunity to file amended Counterclaims, taking into account whatever infirmities the Court will have identified in its decision on Plaintiffs' Motion to Dismiss, just as the Court gave Plaintiffs an opportunity to file the FAC after the Court's August 13 Order. *See* ECF No. 47 at 2.

## VIII. THE COURT SHOULD NOT STRIKE THE RELATED DEFENSES

Defendants have adequately pled their Counterclaims; therefore, defenses related to those Counterclaims should also survive Plaintiffs' effort to strike them, especially in light of the heavy burden associated with motions to strike.

Plaintiffs ask the Court to strike Defendants' Seventh, Eighth, Ninth, Seventeenth, and Eighteenth Defenses "for the same reasons the Counterclaims should be dismissed," calling these Defenses "Mirror-Image Affirmative Defenses" to the Counterclaims. ECF No. 63-1 at 16. Should the Court decline to dismiss the Counterclaims, it correspondingly should – on the same reasoning – deny Plaintiffs' request to strike the listed Defenses.

The Court also should deny Plaintiffs' request to strike the Defenses because Plaintiffs cannot meet the heavy burden associated with a motion to strike. *See supra* pp. 3-4. Plaintiffs, as the moving parties, must establish that "the insufficiency of the defense is clearly apparent." *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (cleaned up). Indeed, "a court should restrain from evaluating the merits of a defense where, as here, the factual background for a case is largely undeveloped." *Id.* Given that, by Plaintiffs' own admission, these Defenses rest on considerations such as who had "knowledge" of what, who is the "primary" wrongdoer, and who is an "active" wrongdoer – matters that can be definitely resolved only with factual development in due course – it is premature for the Court to evaluate, and certainly to strike, the Defenses. ECF No. 63-1 at 16.

## **CONCLUSION**

Plaintiffs' Motion to Dismiss Defendants' Counterclaims and to Strike Certain Affirmative Defenses (ECF No. 63) should be denied.

November 13, 2026

Respectfully submitted,


*/s/ Anthony F. Shelley*
Joshua Drew (Pa. Bar #310927)
Anthony F. Shelley (admitted *Pro Hac Vice*)
Katherine E. Pappas (admitted *Pro Hac Vice*)
DeMario M. Carswell (admitted *Pro Hac Vice*)
MILLER & CHEVALIER CHARTERED
900 Sixteenth St. NW
Washington, DC 20006
Tel. (202) 626-5800
Fax. (202) 626-5801
jdrew@milchev.com
ashelley@milchev.com
kpappas@milchev.com
dcarswell@milchev.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:


Lawrence H. Pockers
Sarah O'Laughlin Kulik
Nina Kalandadze
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
lhpockers@duanemorris.com
sckulik@duanemorris.com
nkalandadze@duanemorris.com

Jon Corey
**McKool Smith, P.C.**
1717 K Street NW, Suite 1000
Washington, DC 20006
jcorey@mckoolsmith.com

David I. Schiefelbein
Daniel I. Hendler
**McKool Smith, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
dschiefelbein@mckoolsmith.com
dhendler@mckoolsmith.com


*Counsel for Plaintiffs*

*/s/ Anthony F. Shelley*
Anthony F. Shelley